**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

KAREN LYNN E.,[1]

Plaintiff,

v.

FRANK BISIGNANO, Commissioner of Social Security Administration,

Defendant.

Case No. 5:25-cv-01424-PD

**MEMORANDUM OPINION AND ORDER AFFIRMING AGENCY DECISION**

Plaintiff challenges the denial of her application for Supplemental Security Income. For the reasons stated below, the decision of the Administrative Law Judge is affirmed.

## I. Pertinent Procedural History and Disputed Issue

On August 18, 2021, Plaintiff protectively filed an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security

---

[1] Plaintiff's name is partially redacted in accordance with Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the United States Judicial Conference Committee on Court Administration and Case Management.

Act ("SSA"), alleging disability beginning August 17, 2020.[2] Administrative Record ("AR") 249-253.[3] Plaintiff's application was denied administratively on June 30, 2022, and upon reconsideration on March 9, 2023. AR 27, 171-180. Plaintiff requested a hearing, which was held via telephone on January 11, 2024, before an Administrative Law Judge ("ALJ"). AR 51-71. Plaintiff appeared with counsel, and the ALJ heard testimony from Plaintiff and a vocational expert. *Id.* On May 8, 2024, the ALJ issued a decision finding that Plaintiff has not been under a disability as defined by the SSA, since August 18, 2021, the date the application was filed. AR 39. The Appeals Council denied Plaintiff's request for review on May 5, 2025, rendering the ALJ's decision the final decision of the Commissioner. AR 1-7.

The ALJ followed the five-step sequential evaluation process to assess whether Plaintiff was disabled under the Social Security Act. *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995), *superseded on other grounds by regulation as stated by Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022); 20 C.F.R. § 416.920(a). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 18, 2021. AR 29 ¶ 1.

---

[2] Plaintiff previously filed an application for supplemental security income and was found not disabled on March 18, 2016. AR 27, 96-114. The prior decision became final after Plaintiff did not seek further review within the requisite period. As a result, with respect to the unadjudicated period under the instant application, there is a rebuttable presumption of continuing non-disability under the *Chavez* Acquiescence Ruling. *See Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1988); Social Security Acquiescence Ruling 97-4(9). The ALJ found that Plaintiff has rebutted the presumption of continuing non-disability due to a change in her age category, changes in the criteria for determining disability, and material changes as appropriate as set forth in *Chavez*. AR 27.

[3] The Administrative Record is CM/ECF Docket Numbers 10-1 through 10-12. Plaintiff's Opening Brief is at Docket Number 16 and the Commissioner's Brief is at Docket Number 20. Plaintiff did not file an optional Reply Brief.

At step two, the ALJ found that Plaintiff had the following severe impairments: "degenerative disc disease of the cervical spine; degenerative disc disease of the lumbar spine; major depressive disorder; generalized anxiety disorder; and posttraumatic stress disorder (PTSD) (20 CFR 416.920(c))." AR 29 ¶ 2. The ALJ found that these impairments significantly limit Plaintiff's ability to perform basic work activities. AR 29.

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926). AR 30 ¶ 3.

Before proceeding to step four, the ALJ found Plaintiff had the Residual Functional Capacity ("RFC") for medium work, as defined in the regulations, with the following limitations:

> except lift and/or carry 50 pounds occasionally and 25 pounds frequently; stand and/or walk for six hours out of an eight-hour workday with regular breaks; sit for six hours out of an eight-hour workday with regular breaks; push and/or pull within the weight limits indicated for lifting and carrying; occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; avoid concentrated exposure to hazards such as heavy moving machinery and unprotected heights; understand, remember, and carry out simple instructions; use judgment to make simple work-related decisions; occasionally interact with supervisors and coworkers, but no tandem or teamwork; and no interactions with the public.

AR 31-32 ¶ 4.

At step four, the ALJ found that Plaintiff has no past relevant work. AR 37 ¶ 5. At step five, the ALJ made findings of Plaintiff's vocational profile. The ALJ noted that Plaintiff was born on December 25, 1965, and was 55 years old, which is defined as an individual of advanced age, and has a high school education. AR 37 ¶¶ 6, 7. The ALJ found that transferability of skills

is not an issue because Plaintiff does not have past relevant work. AR 38 ¶ 8. Considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there are jobs which exist in significant numbers in the national economy that Plaintiff can perform, in the occupations of floor waxer, hand packager, and cleaner II. AR 38 ¶ 9. Accordingly, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, since August 18, 2021, the date the application was filed. AR 39 ¶ 10.

Plaintiff's sole claim is that the ALJ failed to provide specific, clear, and convincing reasons for discounting Plaintiff's testimony about her symptoms and limitations. Dkt. No. 16.

## II. Standard of Review

Under 42 U.S.C. § 405(g), a district court may review the agency's decision to deny benefits. A court will vacate the agency's decision "only if the ALJ's decision was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard." *Coleman v. Saul*, 979 F.3d 751, 755 (9th Cir. 2020) (citations omitted). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Id.*; *Biestek v. Berryhill*, 587 U.S.97, 103 (2019) (same).

It is the ALJ's responsibility to resolve conflicts in the medical evidence and ambiguities in the record. *Ford v. Saul*, 950 F.3d 1141, 1149 (9th Cir. 2020). Where this evidence is "susceptible to more than one rational interpretation" the ALJ's reasonable evaluation of the proof should be upheld. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008); *Tran v. Saul*, 804 F. App'x 676, 678 (9th Cir. 2020).[4]

---

[4] Although statements in unpublished Ninth Circuit opinions "may prove useful [] as examples of the applications of settled legal principles," the Ninth Circuit has cautioned lower courts not to rely heavily on such memorandum dispositions

Error in Social Security determinations is subject to harmless error analysis. *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012). Error is harmless if "it is inconsequential to the ultimate nondisability determination" or, despite the legal error, "the agency's path is reasonably discerned." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).

## III. Discussion

### A. The ALJ Properly Evaluated Plaintiff's Subjective Symptom Testimony

Plaintiff contends that the ALJ impermissibly rejected Plaintiff's subjective symptom testimony. Dkt. No. 16. The Commissioner disagrees and argues that the ALJ's reasons for discounting Plaintiff's testimony regarding her limitations were supported by substantial evidence. Dkt. No. 20. For the following reasons, the Court agrees with the Commissioner.

#### 1. Legal Standard

In the absence of proof of malingering, an ALJ may reject a litigant's believability by identifying "specific, clear, and convincing" reasons supported by substantial evidence. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). This requires the ALJ to "specifically identify the testimony [from a claimant] she or he finds not to be credible and ... explain what evidence undermines that testimony." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (quoting *Treichler*, 775 F.3d at 1102); *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015); *see also Smartt v. Kijakazi,* 53 F. 4th 489, 499 (9th Cir. 2022) ("Ultimately, the 'clear and convincing' standard requires an ALJ to show [their] work[.]"). Thus, to satisfy the substantial evidence standard, the

---

particularly as to issues of law. *Grimm v. City of Portland*, 971 F.3d 1060, 1067 (9th Cir. 2020) ("a nonprecedential disposition is not appropriately used ... as the pivotal basis for a legal ruling by a district court").

ALJ must provide specific, clear, and convincing reasons which explain why the medical evidence is *inconsistent* with the claimant's subjective symptom testimony. *Ferguson v. O'Malley*, 95 F.4th 1194, 1200 (9th Cir. 2024). (emphasis in original).

An ALJ may consider a claimant's conservative treatment when evaluating credibility, particularly when the claimant "responded favorably" to minimal treatment. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Burkett v. Berryhill*, 732 F. App'x 547, 552 (9th Cir. 2018) (same). Proof of "conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007); *Mojarro v. Berryhill*, 746 F. App'x 672 (9th Cir. 2018) (same). An ALJ may also rely on an "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment," and the claimant's daily activities. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014); *Loader v. Berryhill*, 722 F. App'x 653, 655 (9th Cir. 2018) (same).

An ALJ may consider a variety of factors in analyzing the believability of a claimant's symptom testimony, including "ordinary techniques of credibility evaluation." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005); *Evans v. Berryhill*, 759 F. App'x 606, 608 (9th Cir. 2019) (same).

An ALJ can consider whether there is a lack of objective medical evidence supporting a claimant's allegations. However, this factor "cannot form the sole basis" for discounting subjective symptom testimony. *Burch*, 400 F.3d at 681; *Davis v. Berryhill*, 736 F. App'x 662, 665 (9th Cir. 2018).

A court must "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [s]he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Courts, therefore, may not speculate as to the basis for unexplained conclusions but,

rather, must only consider the reasoning actually given by the ALJ. *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014).

Even if an ALJ impermissibly relies "on one of several reasons in support of an adverse credibility determination," the error is harmless if "the ALJ's remaining reasoning and *ultimate credibility determination* were adequately supported by substantial evidence in the record." *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (citation omitted).

**2. Plaintiff's Subjective Symptom Testimony**

***a)* Plaintiff's testimony**

At the hearing, Plaintiff testified that she last worked in 2008, was married for two years, and then took care of her parents -- her father for four years until he passed away and then her mother for nine years until she passed away on November 19th. AR 55-56. Plaintiff testified that she currently lives alone in a house. AR 56. Plaintiff testified that her sons come by about once a month to help her mop, vacuum, and clean the shower. AR 56-57. Plaintiff testified that she could do the dishes for 15 minutes and then needs to take a break. AR 57. Plaintiff stated that she has a fear of leaving the house, so she does not get her mail until one or two o'clock in the morning. AR 57. She stated that she does not want anyone to see her and is afraid that something might happen. AR 57. Plaintiff reported that she receives financial assistance from her sons. AR 57. Plaintiff stated that she does not have a driver's license. AR 58. She testified her driver's license lapsed and she stopped driving in 2014 because of her fear of leaving her mom at home by herself. AR 58. Plaintiff testified that she last went out alone approximately two years ago. AR 58. She testified that her medical providers set up her appointments and provide transportation. AR 58-59.

Plaintiff testified that she has lower back pain and has taken oxycodone for pain, an Ibuprofen prescription, and other medications. AR 59. Plaintiff has tried physical therapy but has missed some appointments because of her fear of leaving the house. AR 59. Plaintiff testified that she uses a walker with a seat that was prescribed for her. AR 60. She testified that she has issues with her feet and knees but has not been able to have surgery because she does not have someone to take care of her post-surgery. AR 60. Plaintiff testified that she could sit for about 20 minutes and then must lay down. AR 61. She testified that she could walk and stand for about 15 minutes and then had pain in her back, knees and feet. AR 61. Plaintiff stated she will lay down and take a nap twice a day. AR 62. Plaintiff testified that she has anxiety and panic attacks and does not want to get out of bed. AR 62-64. She stated that she showers about once a week and uses a shower chair. AR 64. Plaintiff testified that her depression makes her not want to leave the house. AR 65.

### ***b)*** **Adult Function Report**

In an Adult Function Report, Plaintiff reported that she lives alone. AR 303. She stated that she has back pain and cannot stand for too long. AR 303. She reported that she will not brush her teeth or shower. AR 303. She stated she is often depressed, constantly afraid, and fears people. AR 303. She stated that she lays in bed and watches television. AR 304. She stated she does not care for other people but takes care of her dog. AR 304. Plaintiff can make premade salads, easy foods, and microwave. AR 305. Plaintiff stated she tries to clean her room, but her lower back starts to hurt. AR 305. She stated she does not do house or yardwork too often because of her depression. AR 305. Plaintiff stated that she goes outside twice a week to pick up her mail or pick up medications from CVS. AR 306. She stated that she drives only to CVS. AR 306. Plaintiff stated that she does not drive

because she is depressed, scared, and does not like to go outside. AR 306. She reported that she shops by phone and her groceries are delivered. AR 306. She reported that she can pay bills, count change, use a checkbook and handle a savings account. AR 306. Plaintiff stated that her hobby or interest is watching television. AR 307. Plaintiff stated that she talks to her friend on the phone. AR 307. She reported that she has trouble getting along with others due to her anger. AR 307. Plaintiff reported that she has pain in her back, which affects her ability to lift, stand, sit, walk, climb stairs, and affects her memory, concentration, and understanding, and her ability to complete tasks, follow instructions and get along with others. AR 308.

**3. Analysis**

Plaintiff contends that the ALJ failed to provide specific, clear, and convincing reasons for discounting her subjective complaints, with respect to her physical and mental limitations. Dkt. No. 16 at 7-18. "A claimant's subjective symptoms, if credited, are relevant to the determination of a claimant's [RFC].... The RFC is used at step four to determine if a claimant can do past relevant work and at step five to determine if a claimant can adjust to other work." *Ferguson*, 95 F.4th at 1198 (internal citations omitted). "To determine whether a claimant's subjective symptom testimony is credible, the ALJ must engage in a two-step analysis: 'First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.' " *Id.* at 1199 (citing *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014)). If step one is satisfied, the ALJ can only reject the plaintiff's testimony for "clear and convincing reasons," which ultimately requires the ALJ to "show [their] work." *Id.* (citations and internal quotation marks omitted).

At step two of the subjective symptom testimony analysis, an ALJ must identify which testimony is not credible and specifically link that testimony to evidence in the record that undercuts the credibility of the testimony. *See Brown-Hunter*, 806 F.3d at 494; *accord Ferguson*, 95 F.4th at 1200-01. The ALJ may not simply make the conclusory statement that Plaintiff's testimony is not credible because it is inconsistent with the record and then proceed with an RFC analysis. *Brown-Hunter*, 806 F.3d at 493-94. This is because the obligation to provide clear and convincing "reasons" for discounting a plaintiff's testimony is separate and distinct from any obligation to summarize medical record evidence that supports an RFC determination. *Id.*

Here, the ALJ found that Plaintiff had severe impairments including degenerative disc disease of the cervical spine, degenerative disc disease of the lumbar spine, major depressive disorder; generalized anxiety disorder, and PTSD. AR 29 ¶ 2. The ALJ further found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but also found that her statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and the other evidence in the record. AR 33.

In this case, the ALJ did not find that Plaintiff had engaged in any degree of malingering and therefore was obliged to provide at least one "specific, clear, and convincing" reason supported by substantial evidence for discounting Plaintiff's testimony concerning the intensity, persistence and limiting effects of her symptoms. *Trevizo,* 871 F.3d at 678. The Court finds that the five reasons the ALJ provided for discounting Plaintiff's testimony—objective medical evidence, inconsistent statements with the record, ability to ambulate, improvement with treatment, and daily activities—meet this burden. AR 32-37. The Court considers each in turn.

### a) Objective Medical Evidence

At the hearing, Plaintiff testified that she is unable to engage in work activities due to chronic back and neck pain, depression, and anxiety. AR 59-65, 303, 308. Plaintiff argues that the ALJ's main articulated rationale is that her statements were inconsistent with the medical evidence. Dkt. No. 16 at 13. Plaintiff argues that the ALJ tried to point to the medical record to demonstrate that Plaintiff reported no mental impairments and mischaracterizes the medical record. *Id.*, (citing AR 33, 148, 1099).

First, the ALJ discussed the medical evidence and stated that there were inconsistencies in the objective medical evidence regarding Plaintiff's physical and mental symptoms and her testimony. AR 33-37. The ALJ noted that Plaintiff sought treatment regarding her complaints of back pain. AR 33-37. The ALJ pointed out that Plaintiff's physical examinations generally revealed tenderness to palpation of the lumbar spine with a limited range of motion, a negative straight leg raise test which was occasionally noted to be positive on the right, normal muscle strength, intact sensation, normal neurological examinations, normal gait and station, and normal reflexes. AR 33-37 (citing AR 715-16, 732, 773, 869-70, 1106, 1164-65, 1169-70, 1174-75).

The ALJ also pointed out that Plaintiff's mental status examinations showed a cooperative/forthcoming/sad/restless behavior, normal/indifferent attitude, appropriate appearance, normal grooming, congruent affect, depressed/anxious/pleasant/euthymic/irritable mood, tight associations, no psychosis, good insight, good judgment, oriented times four, good concentration, intact memory, organized thought processes, appropriate thought content, alert, normal language skills, normal speech but at times noted to be slowed or pressured, no hallucinations, no delusions, no suicidal or

homicidal ideations, able to follow commands and communicate in full sentences, and appropriate general knowledge. AR 30-31, 34 (*see also* 686-94, 709-10, 715, 732, 773, 870, 1005, 1008, 10111, 1014, 1017, 1020-21, 1023, 1026, 1029, 1032, 1035, 1038, 1041, 1044, 1047, 1106, 1136, 1139-40, 1142, 1166, 1171, 1175).

The ALJ engaged in a lengthy discussion of the objective medical evidence, ultimately concluding that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are inconsistent with the medical evidence." AR 33-37. "When objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt*, 53 F.4th at 498 (emphasis in original). However, inconsistencies with the objective medical evidence cannot be the sole ground for rejecting a claimant's subjective testimony. *Burch*, 400 F.3d at 681; *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see* Soc. Sec. Ruling ("SSR") 16-3p, at *5, 2017 WL 5180304 (March 2017) ("objective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities"). Therefore, the Court considers the other asserted factors.

**b) Plaintiff's Inconsistent Statements and the Record**

The ALJ pointed out that the record revealed several inconsistencies between Plaintiff's testimony and the record which weighed against her allegations. *See* 20 C.F.R. § 416.929(c)(4) (In determining the extent to which your symptoms, such as pain, affect your capacity to perform basic work activities, any inconsistencies in the evidence as well as any conflicts between a claimant's statements and the rest of the evidence will be considered). First, the ALJ highlighted that although Plaintiff testified that she had a fear

of leaving her house and that she did not like to be around "a lot of people," Plaintiff reported in March 2022 that she was hurt because her sons said they would take her to Disneyland but then went without her. AR 32-33, 58-59, 64, 678. Plaintiff said she would have been unable to go anyway, not because she was scared to leave her house or feared being in a crowded amusement park with lots of other people, but because she could not leave her dog. AR 33 (citing AR 678).

Next, the ALJ mentioned that in December 2022, Plaintiff reported to the consultative examiner that she had 3-4 auditory and visual hallucinations a week which the ALJ found was entirely inconsistent with the records from her own therapist and psychiatrist. AR 33-34, 37 (citing AR 602, 604, 708-11, 719). The ALJ also mentioned that Plaintiff denied mood changes or memory loss. AR 33 (citing AR 1148).[5] While Plaintiff highlights other records around this time documenting her mental health complaints, the ALJ reasonably pointed out that this evidence conflicted with her complaints regarding the duration and frequency of her symptoms. AR 33.

In addition, the ALJ pointed out that at the hearing Plaintiff reported she did not drive and did not have a driver's license because it lapsed in 2014, however, her treatment records indicate that she drove during the period at issue. AR 33, 58, 306. In a form Plaintiff completed in February 2022, she reported that she drove. AR 33 (citing AR 306). Plaintiff also reported driving at the consultative examination in February 2022, and she drove herself to another consultative examination in January 2023. AR 33 (citing AR 644, 713). While Plaintiff attempts to discount the consultative doctor's

---

[5] The ALJ also mentioned that Plaintiff reported feeling "fine" overall in 2023, except for symptoms of back and knee pain, but denied fatigue and psychological symptoms. AR 33. As Plaintiff correctly notes, the ALJ appears to have mistakenly cited Exhibit 23F, p. 40 as that citation refers to an appointment seeking treatment for a cough and a request for cough syrup. Dkt. No. 16 at 14.

report due to a scrivener's error in referring to Plaintiff as "he," there was no confusion about Plaintiff's identity. AR 713. The fact that Plaintiff admitted driving in 2022 and 2023 despite testifying at her 2024 hearing that she did not currently drive or have a valid driver's license was a valid consideration that the ALJ could properly consider in evaluating her testimony. *See Burch*, 400 F.3d at 680.

**c) Ability to Ambulate**

The ALJ found Plaintiff's statements concerning the alleged intensity, persistence, and limiting effects of her symptoms on the ability to ambulate were inconsistent with other evidence and the observations of others. AR 33. At the hearing, Plaintiff alleged that she experienced pain with ambulation, had difficulty walking for extended periods, used a walker for her medical appointments and had been prescribed a cane and wheelchair. AR 33-34, 59-61. The ALJ, however, observed that at a consultative examination in January 2023, it was reported that Plaintiff walked without difficulty. AR 33 (citing AR 716). Plaintiff was able to walk on toes and heels and did not present or use any assistive device. AR 33 (citing AR 716). The ALJ also observed that in August 2023, it was reported that Plaintiff demonstrated an antalgic gait at physical therapy; however, she still retained independent mobility. AR 33 (citing AR 1179-80). Further, the ALJ observed that in September 2023, a physical examination of Plaintiff revealed normal strength and sensory in the bilateral lower extremities, her straight leg raise testing was negative, and she displayed a normal gait. AR 33 (citing AR 1165). Accordingly, the ALJ properly discounted Plaintiff's testimony regarding her ability to ambulate and assertion that an assistive device was required for ambulation.

**d) Improvement with Treatment**

The ALJ also found that Plaintiff's subjective symptom complaints showed improvement with treatment. AR 34. For example, the ALJ pointed out that in May 2022, Plaintiff had an appointment to establish care with Ashraf Zadshir, M.D., and she reported a history of PTSD, Attention Deficit Hyperactivity Disorder ("ADHD"), Anxiety, and Gastroesophageal Reflux Disorder ("GERD") but stated that she was "overall doing well." AR 34 (citing AR 650). The ALJ also mentioned that in 2023, Plaintiff's progress notes indicated that while she continued to have periods of feeling anxious, including anxiety about leaving home, she was doing well with her mental health treatment. AR 34 (citing AR 853, 877, 889).

The ALJ highlighted with respect to Plaintiff's physical symptoms, that she reported that her medications were providing "adequate relief," denied any side effects, and said her medications had been "effective for the pain." AR 34 (citing AR 1163). *See Warre v. Comm'r of Soc. Sec.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("[i]mpairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits"). The ALJ further noted that Plaintiff declined lumbar steroid injections and opted for opioid medication treatment through pain management. AR 34 (citing AR 1147, 1149). In sum, the ALJ properly considered Plaintiff's improvement with treatment in evaluating her subjective symptom testimony.

**e) Daily Activities**

Inconsistent daily activities "may provide a justification for rejecting symptom testimony," although "the mere fact that a plaintiff has carried on certain daily activities [. . .] does not in any way detract from her credibility as to her overall disability." *Revels v. Berryhill*, 874 F.3d 648, 667 (9th Cir. 2017) (citation and quotations omitted). The Ninth Circuit recognizes two grounds

upon which inconsistencies between symptom allegations and daily activities may establish clear and convincing reason to discount a claimant's credibility: (1) when those activities contradict the claimant's testimony, and (2) when those activities meet the threshold for transferable work skills. *Orn*, 495 F.3d at 639; *Molina v. Astrue*, 674 F.3d 1104, 1112–13 (9th Cir. 2012) (Even when a claimant's activities "suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."); *See Wennet v. Saul*, 777 F. App'x 875, 877 (9th Cir. 2019) (same).

The ALJ found that Plaintiff's daily activities are inconsistent with her statements about the intensity and persistence of symptoms (20 CFR 416.929). AR 33. In discounting Plaintiff's testimony, the ALJ highlighted that Plaintiff reported that her son comes over monthly to help with household chores, but she continues to live alone for the majority of the time and takes care of her dog; and that she alleged she could not brush her teeth or shower every day but then reported independent activities of daily living. AR 33 (citing AR 56-57, 303-07). In her function report, Plaintiff stated she could prepare simple meals, clean her room for two hours a week (but then indicated she did not clean), went outside twice a week to check the mail and pick up her medication from CVS (but then indicated that she did not go outside), drove to CVS (but then indicated she did not drive), shopped for groceries by phone, and could manage her own money. AR 305-06. Plaintiff also reported she was in touch with family and friends' multiple times a week. AR 30-31, 1065 [in touch with family/friends 3 or 5 times a week"], 1069, 1073, 1078; *see also, e.g.*, AR 643 ["interacts with son and friend almost daily"], 672 ["one friend that she speaks with daily via phone"]). It is clear from the opinion that the ALJ thoroughly considered Plaintiff's testimony, found Plaintiff's daily activities as *one* reason the record does not support the

severity of Plaintiff's alleged symptoms, and concluded Plaintiff was not as limited as alleged. AR 33. As such, the ALJ's assessment of Plaintiff's daily activities was another appropriate basis to discount her subjective asserted limitations. *Id.*

In sum, the ALJ provided specific and legitimate reasons for discounting Plaintiff's symptom testimony. *Trevizo*, 871 F. 3d at 675. Under the relevant standard of review, "[i]f the evidence can reasonably support either affirming or reversing the [ALJ's] conclusion, th[is] court may not substitute its judgment for that of the [ALJ]." *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). As such, the Court finds substantial evidence supporting the ALJ's evaluation of Plaintiff's subjective symptom testimony. *Molina*, 674 F.3d at 1110.

## IV. Order

Accordingly, for all the reasons stated above, the Court finds that the ALJ's decision does not show legal error and is supported by substantial evidence. It therefore is affirmed. A separate judgment will issue.

IT IS SO ORDERED.

Dated: September 23, 2026

Patricia Donahue

HON. PATRICIA DONAHUE
UNITED STATES MAGISTRATE JUDGE